IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |  |
|---|---|---|---|
| PERNELL BROWN, | ) | | |
| | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| v. | ) | No. 10 C 1463 | |
| | ) | | |
| DONALD GAETZ, | ) | Judge Virginia M. Kendall | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION AND ORDER

Pernell Brown was convicted of first-degree murder on May 21, 2004, following a bench trial in Cook County, Illinois. Brown is currently serving his sentence at the Lawrence Correctional Center. On March 4, 2010, Brown filed a Petition for Writ of Habeas Corpus[1] pursuant to 28 U.S.C. § 2254. Brown has also moved to stay this case pending resolution of state court proceedings. For the following reasons, the Court denies Brown's habeas petition and his Motion to Stay and Hold in Abeyance [74].

## I. BACKGROUND

The Court adopts the underlying facts set forth by the Illinois Appellate Court in *People v. Brown*, No. 1-04-2048 (Ill.App.Ct. 2006) (unpublished) (affirming bench verdict against petitioner on direct appeal) (Dkt. No. 68-1) because Brown does not present clear and convincing evidence challenging those facts. *See* 28 U.S.C. § 2254(e)(1); *see also Bolton v. Akpore*, 730 F.3d 685, 687 (7th Cir. 2013) ("Factual determinations by state courts are presumed to be correct

---

[1] Warden Donald Gaetz was originally named as the respondent in Brown's petition as the Warden of Menard Correctional Center, where Brown was previously detained. Stephen Duncan is the warden and custodian at the Lawrence Correctional Center and is therefore substituted as the proper respondent. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

in federal *habeas corpus* proceedings, and the applicant has the burden of rebutting that presumption by clear and convincing evidence.")

## A. FACTUAL BACKGROUND

On May 21, 2004, following a bench trial in the Circuit Court of Cook County, Illinois, Brown was convicted of first-degree murder and sentenced to 50 years' imprisonment for the January 16, 2001 shooting death of Robert Byrd. *People v. Brown*, 2012 IL App (1st) 092597 at ¶ 4 (unpublished). Since the beginning of these state criminal proceedings, Brown has offered the defenses of alibi and mistaken identity. Specifically, Brown has maintained that he was staying in Indianapolis at the time of the shooting and that it was his now-deceased half-brother that committed this crime.

At trial, the State presented six witnesses, including two eyewitnesses. The first eyewitness, Walter Thomas testified that he was at the Super Sub Shop located at 611 N. Cicero in Chicago around 1:17 a.m. on January 16, 2001. *Brown*, No. 1-04-2048 at *2. Thomas was standing by the door to the sub shop when he observed a small red Buick pull in front of the shop and the driver—later identified as Brown—get out of the car with a gun. *Id*. Brown then walked into the sub shop and began firing the gun, at which point Thomas fled the scene. *Id*. On February 9, 2001, Thomas met with Area 4 Chicago Police Officers and identified the vehicle driven by Brown the evening of the shooting. *Id*. On May 26, 2001, Thomas returned to Area 4 headquarters and identified Brown in a lineup as the shooter. *Id*.

Venice Blackburn testified that on January 16, 2001 around 1:00 a.m. she walked with Thomas and a group of other individuals to the sub shop. *Id*. at 4. When the group arrived at the sub shop, Byrd—whom Blackburn knew from the neighborhood—was already there. *Id*. at 2, 4. Blackburn said that "everyone was laughing and joking" when someone came into the sub shop

shooting at Byrd. *Id*. at 4. Byrd was the only person shot and, as the shooter moved toward him and he fell to the floor, Byrd reached at Blackburn's leg and was shot again. *Id*. Blackburn identified Brown as the shooter, saying that she had seen him in the neighborhood a few times prior to the shooting. *Id*.

Cory Gilmore testified that he had known Brown his whole life, but had no recollection of the evening in question due to impaired memory from his prior drug addiction. *Id*. at 5-6. The State then offered a stipulation that if Assistant State's Attorney Jennifer Gonzalez was called to testify she would have testified that she interviewed Gilmore on February 7, 2001 regarding the shooting death of Robert Byrd and that, during that interview, Gilmore stated that he left the sub shop with Robert Curry before the time of the shooting, but did talk to Brown just before Brown went into the sub shop. *Id*. at 6-7. Curry confirmed in his testimony that he left the sub shop with Gilmore before the time of the shooting. *Id*.

Kevin Tenard testified that around 1:30 a.m. on January 16, 2001, he was at the home of Iesha Rials, the mother of Brown's child. *Id*. at 7. At that time, Brown drove up to the house in a red car and asked Tenard to give the car keys to Rials. *Id*. Brown then left the premises in a different car. *Id*. To close its case, the State called Detective Michael Delassandro, whose testimony included highlights from his investigation of Thomas, Gilmore, Rials, and Tenard. *Id*. at 8-9.

The Defense countered by calling Brown's mother, Tawana Brown, and Ms. Brown's friend of fifteen years, Elaine Jefferson, who both testified that Brown was staying with Jefferson in Indianapolis at the time of the shooting. *Id*. at 9-10.

## B. PROCEDURAL BACKGROUND

On May 21, 2004, a trial court in the Circuit Court of Cook County convicted Brown of the first-degree murder of Robert Byrd. *Brown*, 2012 IL App (1st) 092597 at ¶ 4. The judgment of the trial court was affirmed on appeal and Brown began serving his sentence at the Menard Correctional Center in Menard, Illinois. *See People v. Brown*, 365 Ill. App. 3d 1096 (1st Dist. 2006) (unpublished) (petition for leave to appeal to the Ill. S.Ct. denied, 221 Ill.2d 646 (2006)). Brown is currently serving his sentence at the Lawrence Correctional Center in Sumner, Illinois. (*See* Dkt. No. 72).

On December 26, 2006, Brown filed his first *pro se* post-conviction petition in the Circuit Court of Cook County, Illinois alleging ineffective assistance of trial and appellate counsel and asserting actual innocence. *See Brown*, 2012 IL App (1st) 092597 at ¶ 5. Specifically, Brown argued that his trial counsel was ineffective for failing "to present expert witnesses to testify about the effects of narcotics on the perceptions and powers of observation of persons under the influence of such substances." *People v. Brown*, No. 1-07-0406 (Ill.App.Ct. 2008) (unpublished) (Dkt. No. 16-12). He argued that his appellate counsel was ineffective for failing to raise this ineffective trial counsel argument on direct appeal. *Id*. The trial court dismissed his petition; the Illinois Appellate Court affirmed; and the Illinois Supreme Court denied Brown's petition for leave to appeal. *People v. Brown*, 385 Ill. App. 3d 1126 (1st Dist. 2008) (unpublished); *Brown*, 2012 IL App (1st) 09259 at ¶ 5; *People v. Brown*, 231 Ill.2d 638 (2009).

In June 2009, Brown filed a *pro se* petition for leave to file a successive post-conviction petition, alleging newly discovered evidence demonstrating his actual innocence. *See Brown*, 2012 IL App (1st) 092597 at ¶ 6. The newly discovered evidence was his own affidavit and an affidavit from a witness present at the scene of the crime. *Id*.

On March 4, 2010, while Brown's petition for leave to file his successive post-conviction petition was pending in Illinois State Court, Brown filed a petition for habeas corpus relief in this Court under 28 U.S.C. § 2254. (Dkt. No. 1). On February 24, 2011, the Court appointed counsel to represent Brown on his habeas petition. (Dkt No. 24). His case was then stayed, beginning on April 19, 2011, due to pending state law claims. (Dkt. No. 31). The Illinois Court of Appeals subsequently affirmed the trial court's denial of leave for Brown to file a successive petition for post-conviction relief. *People v. Brown*, No. 1-09-2597 (Ill.App.Ct. 2011) (unpublished). But, about a year later, the Illinois Supreme Court entered a supervisory order directing the Illinois Appellate Court to vacate that order and reconsider its ruling in light of *People v. Edwards*, 2012 IL 111711. *People v. Brown*, 967 N.E.2d 807 (2012).

While proceedings were pending in the Illinois Appellate Court, Brown supplemented his habeas petition and was granted a second stay of proceedings in this Court. (Dkt. No. 43). On December 21, 2012, the Illinois Appellate Court affirmed the trial court's denial of Brown's petition for leave to file his successive post-conviction petition. *Brown*, 2012 IL App (1st) 092597 (petition for leave to appeal denied) (Dkt. No. 68-21); *see also Brown*, 967 N.E.2d 807 (2012).

The stay on Brown's habeas petition was lifted and his habeas petition became fully briefed on March 4, 2015. However, in October 2014, Brown requested a third stay of proceedings in this Court pending resolution of his second motion for leave to file a successive post-conviction petition. His new request for leave to file a successive post-conviction petition again alleges actual innocence, this time based on affidavits by two more witnesses. Since requesting a stay of these proceedings, Brown's motion for leave to file a successive post-

conviction petition was denied in the Illinois trial court and is currently pending before the Illinois Appellate Court. (*See* Dkt. No. 78, Ex. A).

Petitioner filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. In his petition, Petitioner presents essentially six grounds for habeas relief: (1) admission of "hearsay statements" where there "was no contradiction between the witness trial testimony and his prior statement" and the witness "could not recall anything about the shooting incident or any connection of the incident to the defendant Brown, or could not challenge any statement attributed to him, where the defense could not test the veracity of the written document;" (2) the trial court's failure to find Brown guilty beyond a reasonable doubt; (3) ineffective assistance of trial counsel for failing to present evidence regarding the effect of narcotics on the observational abilities of two drug-addicted eyewitnesses; (4) ineffective assistance of appellate counsel for failing to raise this ineffective trial counsel argument on direct appeal; (5) actual innocence and the denial of right to fair trial where evidence showing Brown is actually innocent could have been discovered prior to trial had his attorney been effective; and (6) ineffective assistance of trial counsel for failing to conduct a meaningful pretrial investigation or adequately prepare for trial. (Dkt. No. 1, p. 6-8).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs petitions for writs of habeas corpus filed after April 24, 1996. *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Under the AEDPA, habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of, federal law clearly established by the Supreme Court. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 403 (2000). Under the "contrary to" prong of this standard, a habeas petitioner must show that "the state court

confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite [to the Court's]." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong, a habeas petitioner must show that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman,* 398 F.3d 597, 602 (7th Cir.2005); *see also Williams,* 529 U.S. at 410 (an unreasonable application of federal law is different from an incorrect application of federal law). A state court's decision must lie "well outside the boundaries of permissible differences of opinion" to be found objectively unreasonable. *Watson v. Anglin,* 560 F.3d 687, 690 (7th Cir. 2009) (internal citation omitted); *see also Simpson v. Battaglia,* 458 F.3d 585, 592 (7th Cir. 2006) (to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances of the case.").

As a threshold matter, Brown's claims must clear two procedural hurdles: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Exhaustion is satisfied where the habeas petitioner has presented his claims to the highest state court for a ruling on the merits or no state remedies remain available to the petitioner at the time his habeas petition is filed. *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009). This requirement provides the State an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Harvey*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court

to the federal nature of the claim." *Bolton*, 730 F.3d at 694-95 (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations omitted)). However, failure to exhaust a claim does not necessarily preclude the claim. Where "'state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(b)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim.'" *Id.* at 696 (quoting *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004)).

Procedural default, meanwhile, occurs where the petitioner fails to fairly and properly raise an issue on direct appeal or post-conviction review, or where the state court relies on a state procedural bar as an independent basis for its disposition of the case. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Of course, like exhaustion, procedural default does not necessarily terminate the petitioner's claim. *See House v. Bell*, 547 U.S. 518, 536 (2006). This Court may still hear a petitioner's procedurally defaulted claims if he can demonstrate both cause and prejudice resulting from procedural default, or that a fundamental miscarriage of justice would occur if this Court refused to hear his claims because he is actually innocent. *Id.*

In this case, all of Brown's claims fail because they are meritless, procedurally defaulted, or both. Those that are procedurally defaulted—including those currently before the Illinois State Appellate Court—are not excused because Brown has failed to show cause for the default and he has not presented any new evidence establishing that it is "more likely than not" that no reasonable juror would have convicted him in light of the new evidence. *See Holmes v. Hardy*, 608 F.3d 963, 967-68 (7th Cir. 2010).

# III. DISCUSSION

## A. HEARSAY STATEMENTS & THE CONFRONTATION CLAUSE

Claims 1 and 2 of Brown's habeas petition attack the trial court's admission of the testimony and written statement of Cory Gilmore. Following the shooting, Gilmore provided a written statement to Assistant State's Attorney Stephanie Gonzalez and Detective Michael Delassandro. According to Gilmore's written statement and the testimony of Gonzalez and Delassandro, Gilmore was outside of the sub shop when Brown arrived in the red Buick just before the shooting. Gilmore, a friend of Brown's since childhood, spoke to him briefly outside the sub shop and then left without witnessing the shooting. Gilmore identified the car and described the scene, but he was not an identification witness. At trial, Gilmore testified that he was unable to recall the shooting or the written statement he allegedly provided law enforcement, but he did identify the signature on the written statement as his own. Gilmore explained that he had suffered severe memory loss due to drug addiction.

To the extent Brown is challenging the trial court's application of Illinois rules of evidence, this Court notes that such challenges generally do not present a cognizable claim for federal habeas relief. *See, e.g., Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *Perruquet*, 390 F.3d at 511 ("Because a state trial court's evidentiary rulings and jury instructions turn on state law, they are matters that are usually beyond the scope of federal habeas review"). It is not "the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). However, the federal habeas court must evaluate a question otherwise reserved for state-court review where a specific constitutional right is implicated or where "mechanistic application of state evidentiary rules may deprive criminal defendants of a fair trial." *Rice v. Bowen*, 264 F.3d

698, 702 (7th Cir. 2001); *see also Perruquet*, 390 F.3d at 511. Here, therefore, this Court will consider whether Brown's constitutional right of confrontation was violated where the party bearing witness against him did not recall the events in question.

The Supreme Court issued its opinion in *Crawford v. Washington* on March 8, 2004: about two months before Brown was convicted on May 21, 2004, but about four months after Gilmore testified on December 10, 2003. 541 U.S. 36, 68 (2004). This Court need not inquire into the applicability of *Crawford* under this unusual timing, however, because the weight of authority both before and after *Crawford* suggests that there was no Confrontation Clause violation on these facts. *See U.S. v. Ghilarducci*, 480 F.3d 542, 548 (7th Cir. 2007) (witness's partial memory loss did not deprive defendant effective cross-examination) (citing *U.S. v. DiCaro,* 772 F.2d 1314, 1327–28 (7th Cir.1985) (finding that, on the facts, a witness's assertions of memory loss did not deprive the defendant of an effective cross-examination); *Creekmore v. Dist. Ct. of the Eighth Judicial Dist. of Montana,* 745 F.2d 1236, 1238 (9th Cir.1984); *U.S. v. Riley,* 657 F.2d 1377, 1386 (8th Cir.1981); *U.S. v. Payne,* 492 F.2d 449, 454 (4th Cir.1974)); accord *U.S. v. Owens*, 484 U.S. 554, 557, 564 (1988).

First of all, Gilmore did not have complete memory loss and unequivocally recalled growing-up with Brown and having relationship with him. *See Ghilarducci*, 480 F.3d at 548 (partial memory loss did not deprive defendant effective cross-examination). Moreover, the fact-finder did not consider Gilmore's testimony in a vacuum: Brown's counsel tested Gilmore's credibility extensively, probing him on his drug addiction and criminal history, and generally subjecting him to the crucible of cross examination. (Dkt. No. 68-29, p. 37-43). Gilmore cooperated in answering all of the defense attorney's questions and recounted with some detail his relationship with Brown leading-up to the shooting, as well as the various drugs he was and

was not addicted to at the time of the shooting. While there may be circumstances under which a witness' memory loss gives rise to confrontation concerns, this Court doubts that Brown's opportunity to cross-examine Gilmore fell below constitutional standards based on the facts in this case. *See, e.g., Ghilarducci*, 480 F.3d at 548 (witness's partial memory loss did not deprive defendant effective cross-examination)

Furthermore, even if it were error to admit Gilmore's testimony and written statement, that error was harmless. *See Ghilarducci*, 480 F.3d at 549 (conducting harmless error analysis on alleged violation of Confrontation Clause) (citing *Murillo v. Frank*, 402 F.3d 786, 791 (7th Cir. 2005)). Relevant factors in determining whether a violation of the Confrontation Clause constitutes harmless error include whether the testimony was cumulative; the presence of corroborating or contradicting testimony of the witness; the extent of cross-examination permitted; and the overall strength of the prosecution's case. *Anderson v. Cowan*, 227 F.3d 893, 897-98 (7th Cir. 2000) (citing *Del. v. Van Arsdall*, 475 U.S. 673, 684 (1986)). In this case, Brown's attorney vehemently objected to the admission of Gilmore's written statement as lacking foundation and as hearsay statements that the witness did not recall making. (Dkt. No. 68-29, p. 18-37). He then cross-examined Gilmore regarding his drug addiction, criminal history, and lack of memory. (Dkt. 68-29, p. 37-43). Meanwhile, the State not only provided the corroborating testimony of ASA Gonzalez and Detective Delassandro indicating that Gilmore credibly made the subject statement, but also provided a significant amount of evidence other than this statement to prove its case, including the testimony of other witnesses and a surveillance video. The trial court weighed all of these considerations and ultimately admitted the subject statements, noting: "we're not talking about a witness who says that he actually saw the shooting or identifies the Defendant as the shooter, he gave testimony about a vehicle and

about the scene, the Defendant at the scene, driving a certain vehicle, but, he is not an identification witness…in terms of the significance of the testimony that this witness gave for purposes of reversible error, or any kind of error that I might commit by allowing this statement under Counsel's argument into evidence. The error would certainly in my opinion be harmless." (Dkt. 68-30, p. 53-54). The trial court clearly considered the importance—or lack of importance—of Gilmore's statements against the other evidence before him in determining whether to admit the statements and based on these statements by the trial court, this Court cannot conclude that the trial court's admission and consideration of the contested statements violated Brown's constitutional rights.

Therefore, because Gilmore testified at Brown's trial and was subject to cross-examination and because the admission of his out-of-court statement was at most harmless error, the admission of his testimony and his out-of-court statements did not violate Brown's Sixth Amendment rights to confrontation and a fair trial.

## B. SUFFICIENCY OF THE EVIDENCE

Brown also claims that there was insufficient evidence to support his conviction: in his view, the state's identification witnesses were "neither credible nor reliable." (Dkt. No. 1, p. 57). Under the Due Process Clause, a defendant cannot be convicted unless the State proves all the elements of the crime[2] beyond a reasonable doubt. *Jackson v. Va.*, 443 U.S. 307, 316 (1979). When considering a sufficiency of the evidence claim on federal habeas review, the Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[2] In this case, under Illinois law, the crime of murder occurs when a person kills an individual without lawful justification and either intends to kill or do great bodily harm to that individual, or knows that his actions will cause death to the individual. 720 ILCS 5/9–1(a).

*Jackson*, 443 U.S. at 319. In reviewing such a claim, this Court has a limited role and may not reweigh evidence or substitute its own judgment for that of the trier of fact. *Ford v. Ahitow*, 104 F.3d 926, 939 (7th Cir. 1997).

A sufficiency of the evidence claim premised on witness credibility is particularly difficult to prove. *See McFowler v. Jaimet*, 349 F.3d 436, 456 (7th Cir. 2003). To find in favor of the petitioner on such a claim, the Court must determine not only that the witnesses were unreliable as a matter of law, "but that no court could reasonably think otherwise." *Id*. The Court considers the reliability of a witness's identification of the defendant under the "totality of the circumstances." *Id*. at 449 (quoting *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). Relevant factors include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of the time between the crime and the confrontation." *Id*.

Brown argues that his conviction by the trial court was unreasonable because it was based on the testimony of Thomas and Blackburn who both had a history of drug use and minor inconsistencies in their testimony and prior statements. However, the conviction was clearly not based solely on the testimony of those two witnesses and, as the Illinois Court of Appeals found on direct review, so too does this Court find that the trial court fully considered Thomas's and Blackburn's drug use, as well as inconsistencies in their testimony in making its final decision. *See Brown*, No. 1-04-2048, *13-18 (Dkt. No. 68-1); (Dkt. 68-30, p. 501-14). The trial judge considered the length of time each witness was able to view Brown, (*id*. at 15-16), and used the video of the incident to corroborate their testimony, (*id*.) He also considered that they were both cross-examined at length "about where they were in the sub shop, which is where the murder

occurred, and their positions relative to the shooter when the shots were fired, their opportunity to see his face and the time that passed during the incident." (*Id*. at 503). Brown was "basically in front of Thomas when he starts shooting" and Blackburn is "at the counter…and looks over when she hears the first shot." (*Id*. at 504). The trial court noted that Blackburn "had seen the shooter in the neighborhood over the thirteen to fourteen years she lived there" playing basketball or hanging around. (*Id*. at 506-07). The trial court also considered that although Gilmore testified that he did not remember the night of this incident, he had a motive to forget as he sat on the stand facing the defendant, who was a childhood friend he knew all his life. (*Id*. at 509).

Not only does the trial court discuss and consider the strength and weaknesses of the testimony of Blackburn and Thomas, but he also considered the corroborating testimony of Kevin Tenard who received the car keys from Brown following the shooting. He considered the biases of the witnesses, including that the two alibi witnesses were Brown's mother and a very close family friend and that the eyewitnesses were uninterested parties with no apparent bias or reason to lie. (*Id*. at 510). Considering all the evidence presented at trial, this Court finds that the trial court was reasonable in finding Brown guilty beyond a reasonable doubt.

### C. INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

Brown's last four claims are all founded on ineffective assistance of counsel and are all procedurally defaulted: two of the claims were resolved on an independent and adequate state ground and two were never fairly before the Illinois State courts. Although federal courts "are [generally] precluded from considering habeas claims that were procedurally defaulted," a petitioner may still obtain review by "establishing that a fundamental miscarriage of justice would result from denial of his petition because he or she is actually innocent." *Coleman v.*

*Lemke*, 739 F.3d 342, 349 (7th Cir. 2014). As discussed below, Brown's final claims are procedurally defaulted and cannot be saved by the *McQuiggin* gateway of actual innocence.

As a preliminary matter, however, this Court notes that it refuses to stay these proceedings while the Illinois Court of Appeals rules on Brown's third post-conviction proceeding, which involves the "newly discovered" witnesses Austin and Norwood. (*See* Dkt. No. 79, p. 3). Brown claims that these witnesses are related to his ineffective assistance of counsel claims. Under Illinois law, a criminal defendant is only entitled to one post-conviction petition as a matter of right. 725 ILCS 5/122-1(f). This Court has the discretion to stay a mixed habeas petition and hold it in abeyance pending exhaustion of remedies available to the petitioner in state court, but should "only be available in limited circumstances" since such action plainly frustrates the AEDPA's objectives of "encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and of "streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *See Rhines v. Weber*, 544 U.S. 269, 276-77 (2005). In this case, these proceedings have already been stayed twice to allow Petitioner to resolve pending state law claims and a third stay is not warranted.

Stay and abeyance is only available where (1) there was good cause for the petitioner's failure to exhaust his claim first in state court; (2) the unexhausted claim is potentially meritorious; and (3) the petitioner did not engage in intentionally dilatory litigation tactics." *Id.* at 277-78. This Court does not need inquire into whether Brown has been engaging in intentionally dilatory litigation tactics or whether his pending claim is potentially meritorious because Brown has failed to demonstrate good cause for failing to exhaust his most recent claims in state court before proceeding here. *See Rhines*, 544 U.S. at 277–78; *Arrieta v. Battaglia*, 461

F.3d 861, 866 (7th Cir. 2006); *see, e.g.*, *U.S. ex rel. Young v. McCann*, No. 07 C 1100, 2007 WL 2915634, *4 (N.D. Ill. 2007).

Brown maintains that he was delayed in finding these witnesses and bringing the claims currently in state court because he is indigent and imprisoned; suffered at the hands of ineffective trial counsel; and as a result of his ineffective trial counsel, did not have access to surveillance footage of the shooting. (Dkt. No. 79, p. 5-6). The proceeding currently pending in state court, however, does not involve eyewitnesses that would have been visible on the surveillance video and—even if they were—that footage was available to Brown no later than at the time of his trial: more than nine-and-a-half years before he ascertained the affidavits of Austin and Norwood. Even if his trial counsel were ineffective, such gross delay in bringing the claims currently in the state court is not justified by the record before this Court, especially since Brown has already exhausted a post-conviction petition based on "new" witnesses identified from the video surveillance. The mere fact that a prisoner acting pro se is incarcerated and lacks legal knowledge is insufficient to demonstrate good cause. *See, e.g., Johnson v. Huibregtse*, 2008 WL 462135, *7 (W.D. Wis. 2008) (pro se status insufficient to demonstrate good cause for failing to timely exhaust state court remedies); *Smith v. Giurbino*, 2008 WL 80983, *5 (S.D.Cal. 2008) (granting stay on basis of prisoner's lack of legal expertise would be contrary to admonition in *Rhines* that stay and abeyance be available only in "limited circumstances"). This Court is not unsympathetic to the difficulties that pro se prisoners face in maneuvering the state and federal court systems, however, those difficulties are insufficient to excuse Brown's failure to exhaust his claims currently pending in state court. Therefore, his Motion to Stay is denied.

**1. Ineffective Assistance of Trial Counsel for Failure to Present Expert Testimony**

Brown first claims that his trial counsel provided ineffective assistance of counsel for "failing to call an expert witness to testify about the effects of narcotics on the perceptions and powers of observation of persons under the influence of such substances." *Brown*, No. 1-07-0406, at 2 (Dkt. No. 16-12). This claim is procedurally defaulted because it was denied by the Illinois Appellate Court on the independent and adequate state ground that Brown failed to comply with the Illinois Post-Conviction Hearing Act. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) ("[A] federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground") (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). Under the Act, a petition for post-conviction relief "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2. This rule, well-recognized and frequently applied in Illinois (*see People v. Guest*, 655 N.E.2d 873, 883 (1995)), constitutes an adequate and independent ground for default. *See Thompkins v. Pfister*, 698 F.3d 976, 986–87 (7th Cir. 2012) (failure to submits affidavits with post-conviction petition "is an independent and adequate state ground for rejecting" a claim) (cert. denied 133 S.Ct. 1830 (2013)); *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) ("A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case."). The Illinois Appellate Court plainly and justifiably relied on the affidavit rule to bar Brown's claim that his counsel was ineffective for not calling an expert to testify about the effects of narcotics on the perceptions of persons under the influence of such substances and such reliance is generally accepted as a procedural bar to habeas relief in this Court. *Brown*, No. 1-07-0406, at 7 (Dkt. No. 16-12) (petition for leave to appeal denied, *Brown*, 231 Ill.2d 638).

## 2. Ineffective Assistance of Appellate Counsel

Brown next asserts a claim for ineffective assistance of appellate counsel for failing to raise the ineffective assistance of trial counsel argument just discussed. For the same reasons discussed above, this claim is also procedurally defaulted because it was denied by the Illinois Appellate Court on the independent and adequate state ground that Brown failed to comply with the Illinois Post-Conviction Hearing Act. *See Smith*, 598 F.3d at 382 ("[A] federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground") (citing *Thompson*, 501 U.S. at 729-30); *see also Brown*, No. 1-07-0406, at 7 (Dkt. No. 16-12) (petition for leave to appeal denied, *Brown*, 231 Ill.2d 638).

Moreover, even if Brown properly preserved his ineffective assistance of appellate counsel claim, he may only prevail here if he establishes that his appellate counsel "failed to raise an issue that was both obvious and clearly stronger than the issues he did raise," which he cannot do. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citing *Kelly v. U.S.*, 29 F.3d 1107, 1112 (7th Cir. 1994)). On appeal, Brown's appellate counsel made three arguments: (1) that the State failed to prove Brown guilty of murder beyond a reasonable doubt because the testimony of the identification witnesses was not credible; (2) that Brown was denied his sixth amendment right to confrontation; and (3) that the trial court improperly admitted the prior inconsistent statements of a witness under the relevant state evidentiary rules. Raising trial counsel's ineffectiveness in this case would have required meeting the rigorous standards under *Strickland* and, as review of trial counsel's conduct reveals, such argument would neither have been obvious, nor clearly stronger than the issues raised. Brown's trial counsel put on two alibi witnesses and developed the twin defenses of alibi and mistaken identity throughout trial. On the record before it, this Court cannot speculate as to the prudence of trial counsel's trial strategy

and—more importantly—it cannot conclude that appellate counsel was ineffective for failing to raise this ineffective assistance of trial counsel claim.

### 3. Ineffective Assistance of Trial Counsel for Failing to Conduct a Meaningful Pretrial Investigation

Finally, Brown claims that his trial counsel was ineffective for failing to adequately investigate and identify exculpating witnesses prior to trial. These claims are barred because they were never raised in state court. Generally, a federal court can only consider a petition under § 2254 after the petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b)(1); *McAtee v. Cowan*, 250 F.3d 506, 508 (7th Cir. 2001). To prevent procedural default for failing to exhaust state remedies, the petitioner must have presented fairly his federal claims and those claims must have been resolved on the merits during the state proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002). If a petitioner fails to satisfy either of these requirements, the petition is barred. *Mahaffey*, 294 F.3d at 914-15.

Though Brown has raised a number of issues in his direct appeal, post-conviction proceeding, and successive post-conviction proceeding, he has never raised a "failure to investigate" claim prior to entering this Court. A petitioner fairly presents his federal claim to the state courts where he provides them "both the operative facts and the controlling legal principles on which his claim is based." *Perruquet*, 390 F.3d at 520. Though he need not, especially in the case of a *pro se* petitioner, cite "book and verse on the federal constitution," he must alert the state courts to the federal underpinnings of his claim. *See Perruquet*, 390 F.3d at 520. Review of Brown's briefs on direct appeal and appeal of his post-conviction petitions, as well as the three corresponding Illinois Appellate Court orders and three petitions for leave to appeal to the Illinois Supreme Court include a myriad of allegations, including that Brown is actually innocent

and that his trial counsel was ineffective for failing to put on expert testimony regarding the impact of narcotics on eyewitnesses, but nothing in those documents—or any other documents in the record—convince this Court that Brown ever presented the Illinois courts with a failure to investigate claim. The Illinois court need not guess at every conceivable claim a petitioner is making—especially where a petitioner such as Brown has carefully considered, prepared, and presented a number of other claims. Rather, a state court need only look at the "appellant's brief and the cases cited there in order to ascertain whether the appellant is making a federal claim." *Perruquet*, 390 F.3d at 521 (citing *Baldwin v. Reese*, 124 S.Ct. 3147).

### 4. Actual Innocence

Generally, federal courts "are precluded from considering habeas claims that were procedurally defaulted." *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014). Nevertheless, Brown seeks review of his four defaulted claims for ineffective assistance of counsel by claiming that a fundamental miscarriage of justice would result from denial of his petition because he is actually innocent. *See id.* (petitioner can still obtain review by "establishing that a fundamental miscarriage of justice would result from denial of his petition because he or she is actually innocent"). " '[T]enable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirements unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *Lemke*, 739 F.3d at 349 (quoting *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) (internal quotation marks omitted)). This standard is extremely demanding and "permits review only in the extraordinary case." *Id.* at 349 (internal quotation marks omitted).

In support of his actual innocence claim, Brown relies primarily on four "newly discovered" witnesses. Terrell Austin, Randy Norwood, and Martell Halbert have all submitted

affidavits essentially claiming that Brown's now-deceased half-brother, David Payton, was the shooter in this case; and Brown avers that Mario Nixon would testify similarly if subpoenaed. Each affidavit explains in illustrative detail the affiant's version of the events that occurred the evening of the shooting. Austin asserts that he was next door to the sub shop acting as a "Look Out" for individuals selling heroine the evening of the shooting when he saw David Payton "jump" out of a car with a gun in his hand and go into the sub shop. (Dkt. No. 74, p. 58). He then heard shots fired inside the shop. (*Id.*) Norwood claims he was in an apartment building around 12:30 am the night of the shooting when he overheard David Payton ask another man in the apartment for a gun. (Dkt. No. 74, p. 62). The man asked Payton what he needed the gun for and Payton responded that he wanted to scare Byrd. (*Id.*) Martell Halbert avers that he and Mario Nixon were present in the sub shop the night of the shooting and saw David Payton shoot and kill the victim. (Dkt. No. 68-23). Brown claims that Mario Nixon would testify similarly if subpoenaed to testify—though no affidavit from Nixon was made part of this record. (Dkt. No. 68-22, ¶¶ 10-11).

The first concern with these affidavits is the unexplained length of time it took for the affiants to come forward with their statements. In evaluating the reliability of the evidence of actual innocence, this Court considers "the timing of the submission and the likely credibility of [a petitioner's] affiants." *McQuiggin*, 133 S.Ct. at 1935 (internal quotation marks omitted). Halbert's affidavit was signed in 2007 and the other two were signed in 2014: more than two-and-a-half years and nine-and-a-half years after Brown's guilty verdict. Even if, as Brown claims, his delay was due to not having proper access to the surveillance video and ineffective trial counsel, this Court has no reason to discredit the state appellate court's finding that:

> …the surveillance footage in question was available to [Brown] before trial, and
> was played at trial on at least two occasions. In addition, [Brown] acknowledged

in his affidavit that the […] witnesses were visible on the surveillance footage. It thus follows that [Brown] should have discovered Halbert [and the other witnesses] at or before trial through the exercise of minimal due diligence, and that this evidence is therefore not newly discovered.

*Brown*, 2012 IL App (1st) 092597, at ¶ 17 (internal citation omitted). Though this Court finds this large and unexplained delay persuasive in finding that Brown has ultimately not made the requisite actual innocence showing, the Court need not rely exclusively upon such dilatoriness. *See McQuiggin*, 133 S.Ct. at 1935.

In addition to the timing problem, Brown's new evidence does not sufficiently rebut the evidence presented by the state at trial. The only "new" eyewitness of the shooting is Martell Halbert. This Court assigns Brown's self-serving affidavit that Nixon would corroborate Halbert's account of the evening very little weight. Austin was only present—like prosecution witnesses Gilmore and Curry—outside of the sub shop; and Norwood—like prosecution witness Tenard—was not present at or immediately near the scene of the crime. Against the state's six witnesses and corroborating surveillance video, the affidavits of these four witnesses simply do not warrant the application of the miscarriage of justice exception or an evidentiary hearing. *See, e.g., Hayes v. Battaglia*, 403 F.3d 935 (7th Cir.2005) (affidavits of six alibi witnesses not called at trial insufficient to show actual innocence because government had put on six witnesses claiming petitioner committed crime); *McKee*, 598 F.3d at 387-88 (statements from two witnesses not called at trial insufficient to counter state's two eyewitnesses and defendant's own self-inculpating statements); §§ 2254(e)(2)(A)(ii), (B); *McQuiggin*, 133 S. Ct. at 1934 (under AEDPA, a petitioner seeking an evidentiary hearing must show diligence and, in addition, establish her actual innocence by "clear and convincing evidence"). After reviewing the evidence, old and new, of Brown's guilt, this Court cannot conclude that "no juror, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt." *Lemke*, 739 F.3d at 354 (internal quotation marks omitted).

### 5. Cause and Prejudice

Nor, for the sake of completeness, does the Court find that Brown has shown cause for the default. *See Holmes*, 608 F.3d 963) (two ways to avoid procedural default are to show cause for the default or to show actual innocence). It is true that ineffective assistance of counsel can sometimes be sufficient to show cause. *McKee*, 598 F.3d 374, 384 (7th Cir. 2010). However, even if this Court suspends reality and assumes for a moment that Brown's appellate counsel was ineffective for failing to raise this the failure to investigate claim, not even then would Brown have an explanation for not raising his failure to investigate claim in his first petition for post-conviction relief, the PLA from the dismissal of his petition for post-conviction relief, or second petition for post-conviction relief. *See id.* There is simply no reason in the record to adequately explain why Brown defaulted on his ineffective assistance claims. This is not an extraordinary case warranting excusal from procedural default and Brown's ineffective assistance claims are denied.

### IV. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a state court unless the court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El*

*v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). For the reasons discussed above, Brown has not made that substantial showing of the denial of a constitutional right: reasonable jurists would not debate whether the challenges in his habeas petition should been resolved differently or determine that Brown deserves encouragement to proceed further with his habeas claims. *See Rutledge v. U.S.*, 230 F.3d 1041, 1047 (7th Cir. 2000). Not only were the procedural defaults proven by the record, and no exceptions applicable, but the claims that were decided on the merits were also well within the deference owed to state courts under AEDPA. The Court therefore declines to issue a certificate of appealability.

## CONCLUSION AND ORDER

For the reasons stated, Brown's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied, as is his Motion to Stay.

Date:   May 1, 2015

_____
Virginia M. Kendall
United States District Judge